589 So.2d 1001 (1991)
Avery JONES, Appellant,
v.
The STATE of Florida, Appellee.
No. 90-2846.
District Court of Appeal of Florida, Third District.
November 19, 1991.
Rehearing Denied January 3, 1992.
*1002 Bennett H. Brummer, Public Defender, and Louis Campbell, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Avi Litwin, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and NESBITT and FERGUSON, JJ.
SCHWARTZ, Chief Judge.
On the basis of an infinitesimal "residue" of cocaine on a small piece of metal ribbon, commonly used in smoking the drug, which was found in his jacket pocket, Jones was convicted of possession of cocaine and of narcotics paraphernalia. The defendant does not challenge the latter conviction. He does, however, contend that the cocaine, which was visible on the screen and detectable both by a field test and subsequently in the laboratory, but which was, in the technician's words, not "realistically weighable," was, as a matter of law, of insufficient quantity to justify a possession charge. We do not agree.
It is fully established in the Florida cases that "the quantity [of drugs] possessed is immaterial." State v. Eckroth, 238 So.2d 75, 77 (Fla. 1970); see State v. Thornton, 327 So.2d 227 (Fla. 1976); Jefferson v. State, 549 So.2d 222 (Fla. 1st DCA 1989); see also Evans v. State, 543 So.2d 326 (Fla. 3d DCA 1989). This is the inevitable result under the statute which, of course, makes no qualification as to the amount of controlled substance required. § 893.13(1)(f), Fla. Stat. (1989). To insert, as the appellant suggests, a requirement that the quantity be somehow "usable" for sale or consumption,[1] e.g., People v. Leal, 64 Cal.2d 504, 413 P.2d 665, 50 Cal. Rptr. 777 (1966), would require a degree of expertise which we do not possess, and, more important, an act of judicial statutory amendment in which we may not indulge. See Florida Real Estate Comm'n v. McGregor, 268 So.2d 529, 531 (Fla. 1972).
It is true that the ordinary presumption that one has knowledge of drugs found in his possession, State v. Medlin, 273 So.2d 394 (Fla. 1973), may not apply when there are only trace amounts of drug "lint" or "dust" which, we are told, now adhere to almost everything in South Florida. See United States v. One Gates Learjet, Serial No. 28004, 861 F.2d 868 (5th Cir.1988); State v. Dempsey, 22 Ohio St.2d 219, 259 N.E.2d 745 (1970). This claim is wholly irrelevant to this case, however, in which the cocaine was found on an implement which is usable only for the obviously knowing use of the drug. See Evans, 543 So.2d at 327 (minuscule amounts of cocaine found in smoking pipe). We are *1003 content to adopt the language, if not the holding of People v. Aquilar, 223 Cal. App.2d 119, 35 Cal. Rptr. 516 (1963), cited by appellant:
As forensic science, measuring devices and techniques improve, smaller and smaller amounts of residue are required for the chemist to detect the presence of the narcotic. The presence of the narcotic must be reflected in such form as reasonably imputes knowledge to the defendant.

Aquilar, 223 Cal. App.2d at 123, 35 Cal. Rptr. at 519 (emphasis supplied). The facts of this case obviously fall within this standard.
Affirmed.
NESBITT, J., concurs.
FERGUSON, Judge (dissenting).
I concur in the conviction and one-year sentence for possession of narcotics paraphernalia because neither is challenged in this appeal. I respectfully dissent, however, from the affirmance of the conviction and sentence for possession of cocaine. Aside from my view that the majority opinion is inaccurate on the facts and the law, there are other practical considerations which militate against the sentence.
There is a severe shortage of space in Florida's prisons, and a budget crisis rules out the likelihood of a short-term increase in the construction of new prisons as a solution. To meet the crisis, many violent offenders are being released from state prisons to make room for new nonviolent offenders, having served, in many instances, less than twenty percent of the court-imposed sentence. In this case the Department of Corrections recommended that the defendant be sentenced to two years of community control with a condition that he participate in a drug rehabilitation program. In light of the high cost to house a prisoner,[1] the critical shortage of prison space, and the Department of Correction's recommendation for nonprison time, the three and one-half year prison term for the nonviolent possession of an unrecognizable and unusable residue of cocaine is incomprehensible.[2]
Chief Judge Schwartz's effort for the majority, usually unassailable, is legally flawed in its attempt to reconcile the accurate observation that trace amounts of cocaine may be found, innocently, on "almost everything in South Florida," with this case, where there is criminal liability for the possession of a trace amount of cocaine even though the substance is found on an instrument which has an ordinary use other than for the consumption of cocaine. Indeed, in the second paragraph of the majority opinion it is held:
[T]he statute ... makes no qualification as to the amount of controlled substance required. Sec. 893.13(1)(f), Fla. Stat. (1989). To insert ... a requirement that the quantity be somehow "usable" for sale or consumption, ... would require a degree of expertise which we do not possess, and, more important, an act of judicial statutory amendment in which we may not indulge.
Nevertheless, in the following paragraph the majority recognizes an apparently contradictory, and quite apposite, principle of law that "the ordinary presumption that one knowingly possesses drugs in his possession ... may not apply when there are only trace amounts" of the illegal substance.
If the statement in the indented paragraph above were a strict rule of law, any person in possession of currency, a drinking straw, razor blade, pipe, hypodermic needle, or any common object also used for *1004 ingesting cocaine, which was tainted with a trace amount of cocaine, would be guilty of a felony possession of cocaine. To avoid the unconscionable reaches of this rule, the majority then does what it says it may not do, that is, indulge in an act of judicial statutory amendment. The majority does so by holding that one does not violate section 893.13(1)(f) in possessing a trace amount of cocaine where the trace amount is found on an implement, unless the implement is one which is used only for drugs.
For the purpose of understanding what is and what is not at issue in this case, two different hypothetical scenarios are given:
1) An object in the possession of a suspect is one which ordinarily serves no purpose other than to consume illegal drugs, and is found to contain trace amounts of cocaine without any other evidence that the possessor ever used the instrument to administer or consume the illegal substance.
2) An object in the possession of a suspect is a nondescript item which may have an ordinary and legitimate use but is found, under a microscopic or scientific examination, to contain trace amounts of cocaine or cocaine residue, without any evidence that the possessor has used, or intends to use, the object to administer an illegal drug.
Assuming, as the majority does, that this case falls within the first scenario, the conviction for possessing drug paraphernalia would stand. There is a question, however, whether a conviction for possession of the trace amount of cocaine could stand unless there is other evidence that the cocaine, separate from the paraphernalia, was substantially and consciously held. The possession of an instrument containing trace amounts of an illegal substance may indicate an intent to use drugs in the future. As one writer notes, treating the discovery of traces as the basis for a paraphernalia prosecution is more consistent with the purpose of the drug law than charging the defendant with possession of a residue which admittedly presents no risk of future use or sale. Note, Criminal Liability for Possession of Nonusable Amounts of Controlled Substances, 77 Colum.L.Rev. 596, 618 (1977). But we need not reach the question presented by the first scenario because the uncontroverted evidence shows this case to be like that in the second scenario.
The arresting officer gave testimony about the metal screen:
Q. Detective, would drug paraphernalia such as a screen, would it be not always an object to be manufactured as drug paraphernalia but manufactured for legitimate reasons and converted to illegal use?
A. Yes
Q. In a case of something like this screen?
A. I don't consider it to be paraphernalia unless it has residue or some signs of burn marks. Just the screen itself, no, I don't consider it.
Thus, the question presented by the undisputed facts is whether the possession of an immeasurable, unusable, and unrecognizable residue of cocaine which is affixed to an object that has a common use other than for consuming the illicit substance, may support a conviction for felony possession of the substance without other evidence.
It is well established in Florida law that to be convicted for possession of an illegal substance there must be "a conscious and substantial possession by the accused, as distinguished from a mere involuntary or superficial possession." State v. Eckroth, 238 So.2d 75 (Fla. 1970); Reynolds v. State, 92 Fla. 1038, 1041, 111 So. 285, 286 (Fla. 1926); see also L.J. v. State, 578 So.2d 360, 361 (Fla. 3d DCA 1991) (possession requires knowledge of the illicit presence of the substance). There is no evidence that the defendant's possession of the metal screen was with a conscious knowledge of the presence of an illicit substance. Neither is there any evidence of a substantial possession of cocaine, which would mean at least an amount that could be used.
To possess a substance, as the jury was instructed, means "to have personal charge of or to exercise the right of ownership or management or control over the thing possessed." See Campbell v. State, 577 So.2d 932 (Fla. 1991). Drugs are possessed for *1005 the purpose of either personal use or sale. Where the amount of the substance is too minute for either purpose, it cannot be reasonably presumed that the defendant intended to exercise control over it. More significantly, there is no likelihood of future social harm of the kind which the law was designed to discourage, even if knowledge of the presence of a useless residue can be shown. Note, supra note 2, at 619.
No Florida supreme court case compels an affirmance of the conviction for possession of an illicit substance on the facts of this case. State v. Eckroth, 238 So.2d 75 (Fla. 1970), states the broad rule of law that possession must be conscious and substantial but is factually distinguishable. State v. Thornton, 327 So.2d 227 (Fla. 1976), also relied on by the majority, is similarly distinguishable on the facts. In those cases the controlled substances were both recognizable and usable: Eckroth involved a drag from a pipe filled with marijuana; Thornton concerned a puff from a marijuana cigarette. In this case, the accused was convicted for possession of a controlled substance he might not have known was on his person.
The conclusion that the defendant was in conscious possession of a controlled substance is reached by an impermissible pyramiding of inferences. Summarized, the State's circuitous arguments are: (1) the presence of an infinitesimal trace of cocaine proved that the small metal screen was a narcotics implement; and (2) the fact that the screen was a narcotics implement, as established by the presence of the trace amount of cocaine, proved the defendant's knowledge that the implement contained infinitesimal traces of cocaine. Thus, that which was presumptively unknown  that the metal screen was a narcotics implement  was established inferentially from the presence of cocaine, which inference was in turn used to establish, inferentially, the second critical element  that the defendant was conscious of the presence of cocaine. We have held that proof beyond a reasonable doubt cannot be established by such stacking of inferences. G.C. v. State, 407 So.2d 639 (Fla. 3d DCA 1981) (citing Gustine v. State, 86 Fla. 24, 97 So. 207 (1923)); see also Collins v. State, 438 So.2d 1036 (Fla.2d DCA 1983) (where inferences establishing criminal intent must be drawn from evidence and then pyramided to prove charged offense, evidence lacks conclusive nature to support conviction).
By a fair reading of Eckroth and Reynolds, two Florida supreme court cases, a business executive whose currency is tainted with cocaine dust is not guilty of violating section 893.13(1)(f), absent other proof of knowledge of the presence of the illicit substance and that the amount is usable. For the same reason, the defendant in this case was not proven guilty of the offense for which he is serving a three and one-half year prison sentence.
We should reverse the felony conviction and sentence for possession of cocaine.
NOTES
[1] Jones did not, in any event, establish that this was the case below.
[1] The average cost to house a male prisoner, exclusive of the construction costs for correctional facilities, is approximately $36 per day, or $13,140 per year. Florida Department of Corrections, Summary of Financial Data for Fiscal Year Ending June 10, 1991.
[2] The lengthy term of imprisonment in this case is particularly harsh when compared to sentences generally imposed in drug cases. For example, in another Monroe County case now pending before the court, Perlongo v. State, Case No. 91-1374, the defendant is appealing his sentence of one year in the county jail, and four years probation, imposed for his conviction on two counts of selling cocaine.